# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) 2019 JUL 24 P 3: 49 |
| | ) Crim. No. 19-cr-133-GZS |
| v. | ) 18 U.S.C. §§ 371, 924(a)(1)(A) and |
| | ) 922(a)(6) |
| JUSTIN NEVES | ) |

## PROSECUTION VERSION

If the United States were to proceed to trial on the information in this case, it would prove beyond a reasonable doubt that Justin Neves conspired to violate federal firearm laws. Specifically, the evidence would show the following:

*July 6, 2017 Straw Purchase*

On July 6, 2017, an individual (hereinafter referred to as 'Co-Conspirator 1' or 'CC1') and another individual (hereinafter referred to as 'Co-Conspirator 2' or 'CC2'), drove to Cabela's in Scarborough to look at firearms. CC1 did not intend to purchase a firearm during this trip to Cabela's. While in the car, CC1 received a phone call from Neves. During the phone call, Neves told CC1 that his (Neves') cousin was interested in purchasing a firearm. Neves asked if CC1 could buy a firearm for Neves' cousin in exchange for cash.

CC1 then handed the phone to CC2. CC1 could hear the conversation between CC2 and Neves, who were discussing different types of firearms. Neves told CC2 to purchase a "40 or something big." After the call, CC2 continued to encourage CC1 to purchase the firearm as Neves requested. CC1 eventually agreed to do so.

While inside Cabela's, CC2 led CC1 to the area where the 40 caliber pistols were on display. After showing CC1 where the 40 caliber pistols were located, CC2 left the store and waited for CC1 in the vehicle.

1

After CC2 exited the store, CC1 began speaking with a Cabela's employee about purchasing a 40 caliber pistol. The employee attempted to talk CC1 into purchasing a smaller firearm, but CC1 ultimately purchased a Glock, model 22, 40 caliber pistol, serial number A YN548US. On Question 11a on ATF Form 4473, which states, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" CC1 answered "yes." This response was false. CC1 had no intention of keeping the firearm. Instead, CC1 planned to give the firearm to Neves' cousin in exchange for cash.

After purchasing the Glock from Cabela's, CC1 and CC2 drove directly to meet with Neves and Neves' cousin. In the presence of Neves, Neves' cousin handed CC1 $800 and CC1 handed Neves' cousin the Glock CC1 had just purchased. CC1 was given a couple hundred dollars for purchasing the gun at Neves' request.

*July 7, 2017 Straw Purchase*

The following morning, July 7, 2017, CC1 received another phone call from Neves. During the call, Neves asked CC1 to purchase two 9mm pistols for him.

Following the phone conversation with Neves, CC1 and CC2 drove to pick-up Neves. The three of them then drove to Cabela's. While still in the car in the Cabela's parking lot, Neves handed $1,000 cash to CC1 and told CC1 to "get what you can with this." Neves further told CC1 to buy "something little," indicating that he wanted CC1 to purchase a concealable firearm.

CC1 entered Cabela's alone and asked an employee where the 9mm pistols were located. When CC1 located the display case for the 9mm pistols, CC1 realized he/she would be able to purchase two pistols with the amount of money Neves provided. When CC1 began to complete the ATF Form 4473 for the purchase of the two 9mm pistols, the employee who sold CC1 the Glock 40 caliber pistol the previous day approached him/her. The employee explained to CC1

2

that CC1 could not purchase the two 9mm pistols because it was against Cabela's policy to sell firearms to customers on consecutive days.

After being denied the sale of the two 9mm pistols at Cabela's, CC1 returned to the vehicle, where CC2 and Neves were waiting. When CC1 told Neves that CC1 was unable to purchase the firearms. They then discussed the possibility of purchasing firearms from other area stores for approximately 20 minutes. They eventually settled on Jimi's Trading Center in South Portland.

When the three arrived at Jimi's Trading Center, CC1 entered the store alone, while CC2 and Neves waited in the vehicle. While inside, an employee showed CC1 available 9mm pistols that were for sale. CC1 purchased a Smith and Wesson, model M&P 9, 9mm pistol, serial number HKF3897 for $350. CC1 used the money that Neves previously gave to CC1 while they were at Cabela's. Again on AT Form 4473, CC1 answered "yes" to question 11a, which states, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" Again, this response was false. CC1 had no intention of keeping the firearm. Instead, CC1 planned to give the firearm to Neves – which CC1 did when CC1 returned to the vehicle.

### Neves Interviewed

During the summer of 2017, Neves was arrested on an outstanding state warrant. The 9mm pistol purchased by CC1 on July 7 from Jimi's Trading Center was found on him. When later questioned post-<u>Miranda</u>, Neves first claimed to have found the firearm in "some bushes" and picked it up because he did not want children to get hurt. He later changed his story and admitted that he did not find it but had asked "some random girl" to purchase it for him. Dated at Portland, Maine this 24th day of July, 2019.

Halsey B. Frank
United States Attorney

*/s/ Michael J. Conley*

Michael J. Conley
Assistant U.S. Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME 04101
Telephone: (207) 780-3257
Email: michael.conley@usdoj.gov

4

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2019, I filed the foregoing Prosecution Version with the Clerk of Court via hand-delivery, and will cause notification of such filing to be made to Peter Cyr, Esq.

Michael J. Conley
Assistant U.S. Attorney

5